**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SETH J. DIENER, Guardian *Ad Litem* of | : | |
| ESTATE OF JOSEPH THOMAS | : | |
| MANCUSO, IV, a minor, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  11-4404 |
| THE RENFREW CENTERS, INC. | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA, and | : | |
| JOSEPH T. MANCUSO, III, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                           September 22, 2011

Currently pending before the Court is a Motion to Dismiss by Defendant Joseph T.

Mancuso, III.  For the following reasons, the Motion is granted without prejudice to Plaintiff's

further amendment of the Complaint.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

According to the facts set forth in the Amended Complaint, Plaintiff Seth J. Diener is the

Guardian of Joseph Thomas Mancuso, IV ("Tom"), a minor.  (Compl. ¶ 1.)  On October 7, 2010,

Tom's mother, Lisa Marie Mancuso committed suicide and was survived by her estranged

husband, Joseph T. Mancuso, III ("Mancuso" or "Defendant"), her son Tom, her mother Karen

Rose Diener, and her adult siblings Seth Diener, Jason William Diener, and Dierdre Ann Diener.

(Id. ¶¶ 7-8.)  By Court Order of November 16, 2010, Plaintiff Seth Diener ("Diener" or

"Plaintiff") was appointed temporary fiduciary for his sister's estate to represent it against

Defendant's claim for life insurance proceeds.  (Id. ¶ 9.)

At the time of her death, Lisa Marie Mancuso was the owner of an employer-sponsored life insurance policy, underwritten by Defendant Life Insurance Company of North America ("LINA"),[1] and purchased through Defendant The Renfrew Centers, Inc. ("The Renfrew Centers").  (Id. ¶ 10; Stipulation of Aug. 4, 2011 at ¶ 5.)  The life insurance policy is listed as Policy No. FLX-962473 (the "Policy").  (Id.)  All premiums due on the Policy were paid in full up until the time of Lisa Marie Mancuso's death.  (Id. ¶ 11.)  LINA thereafter received both timely written notice and satisfactory proofs of death.  (Id. ¶ 12.)

Pursuant to the current, written Policy designations, LINA is obligated to pay the insurance proceeds to Defendant Mancuso.  (Id. ¶¶ 13-14.)  Prior to her death, however, Lisa Marie Mancuso commenced divorce proceedings against her husband, which remain pending in the Montgomery County Court of Common Pleas.  (Id. ¶ 16.)  Although a divorce decree has not yet issued, grounds for divorce have been conclusively established.  (Id. ¶ 17.)

On June 1, 2011, Plaintiff, on behalf of his nephew Tom, filed a Complaint for Declaratory Judgment in the Montgomery County Court of Common Pleas.  Before any answer or motion was filed, Plaintiff filed a First Amended Complaint.  Via this Complaint, Plaintiff sought declaratory injunctive relief, as follows: (1) a declaratory judgment that LINA is instructed to issue payment of the decedent's life insurance proceeds directly to the Estate of Thomas Mancuso, a minor; (2) a declaratory judgment that Defendant, Joseph T. Mancuso, III,

---

[1]  Although the Amended Complaint referenced both CIGNA Corporation and LINA as issuers of the Policy, the parties subsequently agreed, by Stipulation, that CIGNA had no responsibility for the Policy at issue and should be dismissed from the case.  That Stipulation was approved and entered by the Court on August 4, 2011.

has no right or entitlement to the life insurance proceeds under the subject Policy; (3) an order enjoining LINA from distributing the proceeds of the Policy except upon Order of the Court of Common Pleas of Montgomery County, pursuant to docket number 2010-05157; and (4) other relief including attorney's fees, costs, and disbursements.  (Id. at Wherefore Cl.)

On July 27, 2011, Defendant filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff responded on August 22, 2011, and Defendant submitted a Reply Brief on August 29, 2011, making this Motion ripe for the Court's consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id.  at 1950.  Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint alleges, but does not show, an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

The present issue before the Court is whether Plaintiff has adequately stated a claim for entitlement to benefits under the Policy. In support of his Motion to Dismiss, Defendant argues that, as the designated beneficiary under the Policy, he is clearly entitled to the proceeds and that

Plaintiff's Amended Complaint fails to set forth a valid claim for distributing them otherwise. Plaintiff, in response, offers three arguments.  First, he claims that, although failing to strictly comply with the change of beneficiary procedures under the Policy, Lisa Marie Mancuso specifically intended and made every reasonable effort to change the beneficiary under her life insurance policy.  Second, Plaintiff contends that prior to Mrs. Mancuso's death, grounds for divorce had been established in the pending divorce proceedings, meaning that the Court of Common Pleas for Montgomery County retains jurisdiction to equitably distribute all assets remaining in her estate.  Finally, Plaintiff asserts that because Defendant pushed Lisa Marie Mancuso "to the despair that resulted in her suicide," he should not be entitled to recover under Pennsylvania's Slayer's Act, 20 Pa.C.S. § 8801.  The Court considers each argument individually.

A.      **Whether the Amended Complaint Alleges Facts Supporting a Reasonable Effort by Lisa Marie Mancuso to Change the Beneficiary**

"Designation of a beneficiary under Pennsylvania law is a matter of contract between the insurer and the insured.  In order to change one's beneficiaries on an insurance policy, one must comply with the policy's terms." John Hancock Mut. Life Ins. Co. v. Boyle, No. Civ.A.85-6755, 1986 WL 9738, at *2 (E.D. Pa. Sept. 4, 1986) (citing Cody v. Met. Life Ins. Co., 5 A.2d 887 (Pa. 1939)).  Pennsylvania, however, follows the equitable doctrine of "substantial compliance." Cipriani v. Sun Life Ins. Co. of Am., 757 F.2d 78, 81 (3d Cir. 1985) (citing Provident Mut. Life Ins. Co. v. Ehrlich, 508 F.2d 129, 132-33 (3d Cir. 1975)).  Under this doctrine, strict and literal compliance with the policy terms is not always necessary. Ehrlich, 508 F.2d at 132-33.  Rather, "Pennsylvania courts will give effect to an insured's intention to change the beneficiary on an

insurance policy where, even in the absence of strict compliance with the policy provisions, the insured has made every reasonable effort under the circumstances to comply with those provisions." Cipriani, 757 F.2d at 81.  Put simply, "'[t]he essential inquiry is whether . . . [it has been] . . . shown that the insured intended to execute a change to such an extent that effect should be given it.'"  Id. (quoting Prudential Ins. Co. of Am. v. Bannister, 448 F. Supp. 807 (W.D. Pa. 1978)).

The Amended Complaint, in this case, is undeniably curt on the subject of substantial compliance.  It states that, "prior to her death, Lisa Marie Mancuso, took steps to and, by information and belief, thought she did prior to her suicide, identify her mother or her son as beneficiary under her life insurance Policy."  (Am. Compl. ¶ 18.)  In his Response to the Motion to Dismiss, Plaintiff does little to elaborate, contending that he can show that "his sister substantially complied with the policy provisions governing change of beneficiaries, that his sister made her intent clear and that she did take affirmative action to accomplish the change." (Pl.'s Resp. Mot. Dismiss 5.)  He then attaches, as an exhibit, his own unsigned, un-notarized affidavit – presented in the form of an e-mail from Plaintiff to one Harriet Litz at CIGNA benefits – describing the steps Mrs. Mancuso took to change the beneficiary to her life insurance policy.  (Id. Ex. A.)

Plaintiff's efforts, however, fail for several reasons.  Primarily, to the extent he relies on the exhibit attached to his Response to the Motion to Dismiss, his argument is improper.  In deciding Rule 12(b)(6) motions, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record."  Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

6

A Court may also consider an exhibit to a defendant's motion to dismiss if the plaintiff's claims are based on that document and if that document is indisputably authentic.  <u>Id.</u>; <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002).  In this case, the "affidavit" included with Plaintiff's brief was not attached to or relied upon in the Amended Complaint.  As such, it may not be considered by the Court without converting the present motion into a motion for summary judgment and providing proper notice and an opportunity to respond to Defendant. Fed. R. Civ. P. 12(d).

Moreover, even if the Court were to convert the pending motion to a motion for summary judgment, the attached exhibits are not admissible.  Fed. R. Civ. P. 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  An unsworn affidavit may be disregarded by a district court and the facts set forth therein cannot create a genuine issue of material fact sufficient to preclude the entry of summary judgment against a party.  <u>See</u> <u>Woloszyn v. Cnty. of Lawrence</u>, 396 F.3d 314, 323 (3d Cir. 2005) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158 n.17 (1970)).  Because the affidavit at issue is neither signed nor notarized, the Court may not accept the facts set forth by its averments.

Given that principle, the Court must rely solely on Plaintiff's singular allegation in the Amended Complaint that "prior to her death, Lisa Marie Mancuso, took steps to and, by information and belief, thought she did prior to her suicide, identify her mother or her son as beneficiary under her life insurance Policy."  (Am. Compl. ¶ 18.)  Such a statement is nothing more than a conclusory allegation of law without any supporting factual allegations to raise

Plaintiff's right to relief above the speculative level.  Twombly, 550 U.S. at 555; Phillips, 515

F.3d at 232-34.  Indeed, Plaintiff fails to identify any purported steps that Mrs. Mancuso took to

effectuate a beneficiary change and even neglects to specify who the intended beneficiary

actually was.  Under both controlling jurisprudence and the pleading standards of Fed. R. Civ. P.

8(a), the Court deems the Amended Complaint insufficient to state claim upon which the

requested relief may be granted.

### B.      Whether the Pending Divorce Proceedings Impact Defendant's Entitlement to the Policy Proceeds

Alternatively, Plaintiff contends that the determination of who should receive the life

insurance proceeds falls within the jurisdiction of the court in which the divorce proceedings are

pending, i.e. the Montgomery County Court of Common Pleas.  In support of this contention,

Plaintiff relies entirely on the Pennsylvania Superior Court case of Taper v. Taper, 939 A.2d 969

(Pa. Super. Ct. 2007).  In that matter, the husband filed a divorce complaint and the parties went

before a special master, who equitably divided the parties' assets and debts.  Id. at 970-71.  The

wife filed exceptions to the master's report and the trial court scheduled oral argument.  Id.  In

the interim, the husband died.  Id.  The trial court nonetheless proceeded with argument and

subsequently denied the wife's exceptions, adopted the master's report, and entered a divorce

decree, granting a posthumous divorce to the husband on the grounds of mutual consent.  Id.

The wife appealed on the issue of whether the court erred in granting the husband's

request for a posthumous divorce.  Id. at 971-72.  On review, the Superior Court acknowledged

that prior Pennsylvania law had long held that equitable distribution could occur only after a

divorce decree was issued, and that a party's death abated any action in a divorce.  Id. at 972-73.

8

The court went on to note, however, that the Divorce Code had since been amended "to provide that upon the death of a spouse, a divorce action will not abate so long as the grounds for divorce have been established." Id. at 973 (citing 23 Pa. Cons. Stat. § 3323(d.1)). Thus, if grounds for divorce have been established pursuant to this subsection, "then the parties' economic rights are determined under the equitable distribution principles rather than the elective share provisions of the Probate Code." Id. Although this new provision did not extend to allow a trial court to grant a posthumous divorce, the trial court retained jurisdiction to enter an order of equitable distribution based upon § 3323(d.1). Id. Under these principles, the court determined that grounds for divorce had been established prior to the husband's death based upon the signed affidavits of consent by the parties. Id. In turn, the trial court had authority to determine the parties' economic rights and obligations under the principles of equitable distribution as established by statute. Id.

Relying on this holding, Plaintiff now contends that although no divorce decree can be entered by the state court due to Ms. Mancuso's death, the parties had conclusively established grounds for divorce before her passing by signing affidavits of consent. As a result, Plaintiff asserts that equitable distribution proceedings survived her death and the life insurance benefits remain within the jurisdiction of the state court.[2]

---

[2] The parties appear to concur that this case is not affected by the amended version of 20 Pa.C.S. § 6111.2. This new version provides that if a spouse dies while divorce proceedings are pending and grounds for divorce are already established, any designation in an individual's life insurance policy in favor of the individual's spouse that was revocable at the individual's death shall become ineffective and shall be construed as if the spouse had predeceased the individual, unless it appears, based on certain factors, that the designation was intended to survive the divorce. 20 Pa. Cons. Stat. § 6111.2 (2010). That statute, however, was amended on October 27, 2010 and became effective on December 27, 2010 – after Mrs. Mancuso's death. Although this amendment would resolve the present dispute, the Pennsylvania Supreme Court has explicitly

Plaintiff's reliance on this case, however, is misplaced.  The case does not touch on the question of when the designated beneficiary of a life insurance policy may be changed in the event of the insured's death during divorce proceedings.  Rather, <u>Taper</u> involves a simple finding that once grounds for divorce are established, equitable distribution proceedings survive the death of a spouse, even though the divorce action itself abates.  This principle fails to either establish Plaintiff's entitlement to the insurance proceeds or deprive this Court of jurisdiction to consider the issue.  Indeed, under Pennsylvania law, even where a right to equitable distribution of marital property continues upon the death of one of the parties, the proceeds of a life insurance policy do not constitute marital property subject to such distribution.  <u>Oswald v. Olds</u>, 493 A.2d 699, 701 (Pa. Super. Ct. 1985) (citing 23 PA. CONS. STAT. 401(f)).  "The proceeds of a life insurance policy on a spouse cannot, obviously, be acquired during the marriage since proceeds are paid upon death.  Consequently, that is not an asset that is acquired during lifetime or marriage," and thus is not "marital property."  <u>Id.</u>; <u>see</u> <u>also</u> <u>SMA Life Assur. Co. v. Piller</u>, No. Civ.A.86-2959, 1987 WL 10710, at *2-3 (E.D. Pa. May 12, 1987), <u>aff'd</u>, 846 F.2d 916 (3d Cir. 1988).  Because a determination of the beneficiary of such proceeds is therefore not part of the equitable distribution proceedings, jurisdiction to resolve that issue in this matter does not rest with the Montgomery County Court of Common Pleas.

### C.   <u>Whether Plaintiff Has Stated A Claim Under the Slayer's Act</u>

held that this statute, and any amendments thereto, could not apply retroactively without violating the Contract Clause of the Constitution.  <u>Parsonese v. Midland Nat'l Ins. Co.</u>, 706 A.2d 814, 819 (Pa. 1998).  As such, this Court must apply the prior version of the statute, which simply indicated that if a person is actually *divorced* from his or her spouse at the time of death, the designation of the spouse as beneficiary of a life insurance policy is ineffective.  20 PA. CONS. STAT. 6111.2 (1994).  Neither party disputes that Mrs. Mancuso was not yet divorced from Defendant at her time of death.

In a final effort to withstand the pending Motion to Dismiss, Plaintiff contends that Defendant hounded and harassed Mrs. Mancuso during divorce proceedings, effectively driving her to kill herself.  In turn, he argues that Defendant should be barred from any portion of the insurance proceeds under the Slayer's Act.

The Slayer's Act provides, in pertinent part, that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent. . . ."  20 PA. CONS. STAT. § 8802.  The Act further defines a "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person."  20 PA. CONS. STAT. § 8801.  The Act contains no requirement that a conviction precede application of its provisions.  In re Klein's Estate, 378 A.2d 1182, 1186 (Pa. 1977).  The party opposing the interest of an alleged "slayer," however, bears the burden of proving that the killing was done both wilfully and unlawfully.  Wellons v. Met. Life Ins. Co., 12 Pa. D & C.3d 109, 111 (1979).

 Yet again, Plaintiff's Amended Complaint fails to state a claim under this statute. Plaintiff simply alleges that Defendant "hounded her and harassed her and effectively pushed her to the despair that resulted in her suicide and should not be permitted to benefit thereby."  (Am. Compl. ¶ 19.)  Nothing in the Complaint describes what actions Defendant took to cause Mrs. Mancuso's death or whether such actions were both "wilful" and "unlawful."[3]  Nor does Plaintiff suggest that Defendant was ever accused, charged, or convicted of any such crime in connection

---

[3]  Plaintiff attached, as an exhibit to his Response to the Motion to Dismiss, an e-mail from Mrs. Mancuso to several unidentified e-mail addresses describing Defendant's actions during the divorce proceedings.  Such an e-mail is both unauthenticated and constitutes hearsay offered for the truth of the matter asserted.  As set forth above, the Court may not consider such evidence either in the context of a motion to dismiss or a motion for summary judgment.

with Mrs. Mancuso's death.  Finally, Plaintiff fails to cite to any jurisprudence finding that

domestic or spousal harassment leading to suicide rises to the level of a "killing" as required by

the Slayer's Act.  In sum, the Amended Complaint falls short of setting forth factual allegations

that raise Plaintiff's right to relief "above the speculative level."[4]  Twombly, 550 U.S. at 555.

     **D.**     **Leave to Amend**

Under the standards of Twombly and Iqbal, the Amended Complaint, in its present form,

fails to state any claim upon which relief may be granted.  Nonetheless, the Court considers

Plaintiff's alternative request that he be granted leave to further amend his Complaint.

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit

a curative amendment unless such an amendment would be inequitable or futile.  Alston v.

Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Dismissal without leave to amend is justified only on

grounds of bad faith, undue delay, prejudice, and futility.  Id. at 236.  This opportunity to amend

must be offered, even if the plaintiff does not specifically make such a request.  Id. at 235.

Defendant provides no response to Plaintiff's request for leave to amend and, as such,

sets forth no bases on which this Court could find any of the above grounds for denial.

Moreover, the Court takes note that the exhibits attached to Plaintiff's Response to the Motion to

Dismiss, while not properly considered in a Rule 12(b)(6) context, contain significantly more

details regarding Mrs. Mancuso's efforts to effectuate the change of beneficiary.  Should Plaintiff

properly allege such facts in a new complaint, he would be more likely to survive a motion to

---

[4] Defendant moves to strike paragraph 19 of the Amended Complaint as irrelevant, scandalous, and impertinent, pursuant to Fed. R. Civ. P. 12(f).  As the Court dismisses the Amended Complaint in its entirety, such relief is unnecessary.  Nonetheless, because Plaintiff will be given leave to amend, the Court cautions Plaintiff against including any similar allegations without providing a sufficient factual basis to support them.

dismiss.  Accordingly, the Court grants Plaintiff a period of twenty days in which he may submit a Second Amended Complaint setting forth sufficient factual allegations supporting a plausible claim that Mrs. Mancuso made every reasonable effort under the circumstances to change the beneficiary on the Policy at issue.  If an amendment is not forthcoming within that time or if Plaintiff expresses his desire to stand on his current Amended Complaint, an order of dismissal will be appropriate at that time.