## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH J. DIENER, Guardian *Ad Litem* of | : | |
| ESTATE OF JOSEPH THOMAS | : | |
| MANCUSO, IV, a minor, | : | |
| and | : | |
| SETH J. DIENER, *Administrator Pro Tem* | : | CIVIL ACTION |
| *of the* ESTATE OF LISA MARIE | : | |
| MANCUSO, deceased | : | |
| and | : | |
| SETH J. DIENER, as Power of Attorney for | : | NO.  11-4404 |
| KAREN ROSE DIENER | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                                January 9, 2014

Pending before the Court are the Motion for Summary Judgment by Defendant Life

Insurance Company of North America and the Motion for Summary Judgment by Plaintiff Seth

Diener.  For the following reasons, Defendant's Motion for Summary Judgment and Plaintiff's

Motion for Summary Judgment are each denied in their entirety.

## I.     FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff is an individual residing in Montgomery County, Pennsylvania.  (Sec. Am.

---

[1] The statement of facts is compiled from a review of the parties' briefs and the evidence submitted in conjunction with those briefs. To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.

Compl. ¶ 1.)  Defendant Life Insurance Company of North America ("LINA") is a Pennsylvania

corporation with its principal place of business in Pennsylvania. (Sec. Am. Compl. ¶ 5; Def.'s

Answer to Sec. Am. Compl. ¶ 5.)

Prior to her death, Lisa Marie Mancuso ("Decedent") was an employee of The Renfrew

Centers, Inc. ("Renfrew")  (Sec. Am. Compl.  ¶¶ 8, 12.)  During Decedent's employment,

Renfrew offered its employees the chance to purchase life insurance underwritten by LINA.

(Sec. Am. Compl., Ex. B, Renfrew Group Policy.)  As part of her employment, Decedent was

automatically enrolled in a group life insurance policy with benefits equal to one year's salary.

(Sec. Am. Compl., Ex. C, CIGNA Literature.)  Decedent also had the option of purchasing

additional, voluntary life insurance.  (Id.)  During the course of Decedent's employment,

Decedent received literature from Renfrew that stated, in relevant part:

> Renfrew provides, at no cost to you, a benefit equal to one times your
> annual salary, to a maximum of $200,000. . . . You have the
> opportunity to purchase additional life insurance for yourself,
> your spouse/ partner, and your dependent children at group rates via
> payroll deduction (with post tax dollars). You may purchase amounts
> between $10,000 and $500,000 in $10,000 increments, up to a
> maximum of five times your annual salary.

(Id.)

Plaintiff purports that in October 2009, Renfrew issued a "Confirmation Statement" to

Decedent that "confirm[ed] [her] recent benefit elections for the 2009–10 Open Enrollment

period."  (Pl.'s Mot. Summ. J, Ex. C, Confirmation Statement.)  Among the benefits catalogued

in the Confirmation Statement is a "CIGNA Group Term Life Insurance" policy at a value of

$45,000, equal to one year of Plaintiff's salary at that time.  (Id.)  Also listed is a "CIGNA

Voluntary Life Insurance" policy at a value of $120,000.  (Id.)  According to the Confirmation

Statement, "[t]hese benefits will remain in effect [from November 1, 2009] until October 31, 2010." (Id.)  Decedent appears to have signed the Confirmation Statement with the date "10/ /09." (Id.)

Sometime around April 2010, Decedent began working at Renfrew on a part-time basis, earning a salary of approximately $23,000.  (Sec. Am. Compl., Ex. E, E-Mail from Decedent to Plaintiff.)  On April 16, 2010, Decedent sent an e-mail to Plaintiff, her brother and financial advisor, stating:

> I have some questions related to my benefits at work.  I  know you said before to always do 401k up to what your employer matches. Does always include now with everything I have going on? I def will be pinching pennys [sic].  I am working part time at Renfrew so my salary is dropping to $20,563.20. . . .  Same questions for my life insurance[.]"

(Id.)  On October 7, 2010, Decedent died.  (Sec. Am. Compl. ¶ 8.)

Plaintiff initiated the present litigation by filing a complaint in the Court of Common Pleas of Montgomery County on June 1, 2011.  On June 11, 2011 Plaintiff filed an Amended Complaint in the Court of Common Pleas of Montgomery County.  On July 8, 2011, Defendant CIGNA Corporation ("CIGNA") removed this case to federal court.  Plaintiff filed a Second Amended Complaint on October 14, 2011.

After some initial motion practice, on February 13, 2013, the parties stipulated to the dismissal of Count I, and parts of Counts II and III of the Second Amended Complaint.  Now, acting in his capacities as guardian *ad litem* for Joseph Thomas Mancuso, IV, as administrator *pro tem* of Decedent's estate, and as power of attorney for Karen Rose Diener, Plaintiff brings two causes of action: Count II alleges that LINA breached its contract with Decedent as to a

3

voluntary life insurance policy; and Count III claims LINA breached its fiduciary duty to Decedent as to the same voluntary life insurance policy in violation of the Employment Retirement Income Security Act ("ERISA").

On September 4, 2013, Defendant LINA filed its pending Motion for Summary Judgment.  On September 5, 2013, Plaintiff filed his pending Motion for Summary Judgment. Defendant LINA filed its Response in Opposition to Plaintiff's Motion on September 18, 2013. The motions are now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by

4

both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  <u>Id.</u> at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec.</u>, 475 U.S. at 586.  "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted."  <u>Arbruster v. Unisys Corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994), <u>abrogated on other grounds</u>, <u>Showalter v. Univ. of Pittsburgh Med. Ctr.</u>, 190 F.3d 231 (3d Cir. 1999).

Notably, "[t]he rule is no different where there are cross-motions for summary judgment." <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008).  As stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  <u>Id.</u> (quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

It is the long-standing law of Pennsylvania that "[a] policy of insurance is a contract and

5

stands on no different basis than any other contract[.]" Blair v. Berkshire Life Ins. Co., 429 F.2d 996, 1000 (3d Cir. 1970) (citing Cleland Simpson Co. v. Firemen's Ins. Co. of Newark, N.J., 140 A.2d 41 (Pa. 1958)). To that end, "[t]o create an insurance contract, 'there must be an offer and acceptance which results in a meeting of the minds.'" J.M.P.H. Wetherell v. Sentry Reinsurance, Inc., 743 F. Supp. 1157, 1170 (E.D. Pa. 1990) (quoting Moser Mfg. Co. v. Donegal & Conoy Mut. Fire Ins. Co., 66 A.2d 581, 582 (Pa. 1949)).

Plaintiff maintains that, at the time of her death on October 7, 2010, Decedent was enrolled in a voluntary life insurance policy. (Pl.'s Mot. Summ. J. 3.) For support, Plaintiff offers the Confirmation Statement purportedly issued by Renfrew and signed by Decedent to "confir[m] [her] recent benefit elections for the 2009–10 Open Enrollment period" including a "CIGNA Group Term Life Insurance" policy at a value of $45,000 and a "CIGNA Voluntary Life Insurance" policy at a value of $120,000. (Pl.'s Mot. Summ. J., Ex. C, Confirmation Statement.) According to the Confirmation Statement, "[t]hese benefits will remain in effect until October 31, 2010." (Id.)

Conversely, LINA contends that Decedent was never enrolled in a voluntary life insurance policy or, alternatively, was no longer enrolled in the policy prior to her death. (Def.'s Mot. Summ. J. 6–7; Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 4.) LINA argues that the Court should not consider the Confirmation Statement because: a) its attachment as an exhibit to Plaintiff's Motion for Summary Judgment was the first time LINA had seen the Confirmation Statement and Plaintiff's failure to disclose it to LINA constitutes a violation of Rules 26(a)(1)(a)(ii) and 26(e)(1) of the Federal Rules of Civil Procedure; and b) it is unreliable on its face because it quotes Decedent's annual salary as $45,000 and her salary as of her death was

6

$23,000.  (Def.'s Resp. Opp'n Pl.'s Mot. Summ. J. 2–4.)

> Rule 26(a)(1)(A)(ii) states, in relevant part, that:

>> [A] party must, without awaiting a discovery request, provide to the other parties a copy— or a description by category and location— of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1)(A)(ii).  Rule 26(e)(1)(A) further requires that:

>> A party who has made a disclosure under Rule 26(a)— or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Id. at 26(e)(1)(A).

LINA argues in its Response that the Court should not consider the Confirmation Statement because it had not seen the document until its attachment as an exhibit to Plaintiff's pending motion.  (Def.'s Resp. Opp'n Pl.'s Mot. Summ J. 2–3.)  Plaintiff did not file a reply to LINA's Response, but he does describe the Confirmation Statement as having been "provided by subpoena[.]"  (Pl.'s Mot. Summ. J. 3.)

The Confirmation Statement is the sum and substance of Plaintiff's claim that Decedent had a valid contract for a voluntary life insurance policy at the time of her death, and is undoubtedly material to his claims for breach of contract and breach of fiduciary duty against LINA.  As such, the Court is troubled by LINA's contention that Plaintiff had not disclosed it prior to making it the crux of its motion for summary judgment.  Without a reply from Plaintiff

7

explaining his purported failure to disclose the Confirmation Statement, the Court cannot confidently rely on it in assessing the pending motions.

Omitting the Confirmation Statement, the only other evidence to which Plaintiff cites for support is a manual reportedly issued by CIGNA to Renfrew describing proper procedures for cancelling an employee's policy.  (Pl.'s Mot. Summ. J., Ex. D, CIGNA Manual.)  It is true that when a defendant insurer asserts cancellation as a defense to a claim of breach of an insurance policy, the burden of proof is on the defendant to show the insured's "clear and precise" intent to cancel the policy.  Del Boring Tire Serv. v. Fed. Emergency Mgmt. Agency, 496 F. Supp. 616, 618 (W.D. Pa. 1980) (internal citations omitted).  LINA has produced no evidence that any policy of Decedent's had been cancelled as of her death on October 7, 2010.  However, the CIGNA Manual does not show whether Decedent had a valid life insurance policy with LINA in the first place, nor does it show that Plaintiff has proven his claims of breach of contract or breach of fiduciary duty. Accordingly, the Court will deny Plaintiff's motion.

As to LINA's motion,  LINA has not pointed to any evidence in either its Motion or its Response to show that it is entitled to summary judgment.  Instead, LINA only argues against the weight of Plaintiff's evidence while failing to submit any affidavits or other exhibits of its own or otherwise argue that there is any evidence to affirmatively support its argument that it is entitled to summary judgment.  In light of such a lack of evidence from which the Court can make any conclusions of law, let alone grant summary judgment, the Court will deny Defendant's motion.

**IV.     CONCLUSION**

For all the foregoing reasons, the Court will deny Defendant LINA's Motion for Summary Judgment in its entirety and deny Plaintiff's Motion for Summary Judgment in its entirety.  In

order to rectify any failure to disclose by the Plaintiff under Rule 26(a)(1)(A)(ii) or Rule

26(e)(1)(A) of the Federal Rules of Civil Procedure, the Court will re-open discovery for thirty

days from the date of this Order for the limited purpose of examination of the Confirmation

Statement.  On Tuesday, February 18, 2014 this Court will hold a status conference for the

primary purpose of setting a date for trial.

      An appropriate order follows.