## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH J. DIENER, Guardian *Ad Litem* of | : | |
| ESTATE OF JOSEPH THOMAS | : | |
| MANCUSO, IV, a minor, | : | |
| and | : | |
| SETH J. DIENER, *Administrator Pro Tem* | : | CIVIL ACTION |
| *of the* ESTATE OF LISA MARIE | : | |
| MANCUSO, deceased | : | |
| and | : | |
| SETH J. DIENER, as Power of Attorney for | : | NO.  11-4404 |
| KAREN ROSE DIENER | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE RENFREW CENTERS, INC., and | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                    February 10, 2015

Currently pending before the Court are: (1) the Motion for Summary Judgment by

Defendant Life Insurance Company of North America; and (2) the Motion for Summary

Judgment by Defendant The Renfrew Centers, Inc.  For the following reasons, both Motions are

granted.

## I.      FACTUAL BACKGROUND

In June 2011, Plaintiff Seth J. Diener, as executor of the estate of Lisa Marie Mancuso

("Mancuso") and guardian *ad litem* for her minor son Joseph Thomas Mancuso, IV, initiated this

action against Defendant Life Insurance Company of North America ("LINA").  Mancuso was an

employee of Defendant The Renfrew Centers, Inc. ("Renfrew") at the time of her death on

October 7, 2010.  (Def. LINA's Statement of Undisputed Facts ("SUP") ¶ 2; Pl's Resp. LINA

SUP ¶ 2.)  During that period, Mancuso's annual salary was slightly less than $23,000.  (LINA's

SUP ¶ 3; Pl.'s Resp. LINA SUP ¶ 3.)  Through a group term life insurance policy issued by

LINA, Renfrew provided Mancuso with insurance coverage of up to one time the amount of her

annual salary (the "Employer-paid Policy").  (LINA's SUP ¶ 4; Pl.'s Resp. LINA SUP ¶ 4.)  In

addition, Mancuso had the option to purchase voluntary life insurance ("voluntary life

insurance"), for which she could elect coverage in units of $10,000 up to a maximum of

$150,000.  (Def. Renfrew's Mot. Summ. J., Ex. A.)

Plaintiff filed his Second Amended Complaint on October 14, 2011, Count I of which

sought benefits under the aforementioned Employer-paid Policy.  (LINA's SUP ¶ 5; Pl.'s Resp.

LINA SUP ¶ 5.)  LINA did not dispute that payment of $23,000 under the Employer-paid Policy

was due.  (LINA's SUP ¶ 6; Pl.'s Resp. LINA SUP ¶ 6.)  LINA paid that claim, thereby resulting

in the Court's dismissal of Count I by Order dated February 13, 2013.  (LINA's SUP ¶ 7; Pl.'s

Resp. LINA SUP ¶ 7.)

Counts II and III of the Second Amended Complaint remain and relate to an alleged

second insurance policy underwritten by LINA—*i.e.*, the voluntary life insurance.  (LINA's SUP

¶ 8; Pl.'s Resp. LINA SUP ¶ 8.)  Count II alleges breach of contract on the grounds that Mancuso

purchased and did not cancel a voluntary life insurance policy, underwritten by LINA, with a face

value of between $120,000 and $200,000.  (LINA's SUP ¶¶ 8–9; Pl.'s Resp. LINA SUP ¶¶ 8–9.)

Count III alleges breach of LINA's fiduciary duty with respect to Mancuso's purported

maintenance of the voluntary life insurance policy.  (LINA's SUP ¶ 10; Pl.'s Resp. LINA SUP ¶ 10.)

LINA filed its Answer to the remaining counts of the Second Amended Complaint on March 18, 2013.  (LINA's SUP ¶ 11; Pl.'s Resp. LINA SUP ¶ 11.)  In doing so, LINA denied that Mancuso ever maintained a LINA-issued voluntary life insurance policy that had a "face value" of $200,000, and denied that, at the time of her death, Mancuso otherwise maintained or was enrolled for coverage under a voluntary or supplemental LINA-issued life insurance policy.  (LINA's SUP ¶ 12; Pl.'s Resp. LINA SUP ¶ 12.)

Over the course of this entire litigation, Plaintiff has not served any discovery requests on Defendants.  On January 9, 2014, the Court denied Plaintiff's and Defendant LINA's Cross-motions for Summary Judgment, and allowed additional discovery to proceed through May 23, 2014.  On June 23, 2014 and June 24, 2014 respectively, Defendants LINA and Renfrew filed Motions for Summary Judgment.  Following a Court-sanctioned extension of time, Plaintiff responded on August 29, 2014.  Defendants filed Reply Briefs on September 26, 2014, and Plaintiff filed Sur-reply Briefs on November 21, 2014.  Having reached the close of this extensive briefing period, the Court now turns to the merits of the pending motions.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to

return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

4

III.    **DISCUSSION**

A.      **Breach of Contract (Count II)**

Count II of the Second Amended Complaint alleges that Mancuso purchased life

insurance policies through her employment at Renfrew, underwritten by LINA, and at no time

did she ever cancel any policies.  (Second Am. Compl. ¶ 35.)  In turn, Plaintiff asserts that

LINA's failure to pay the face value of the voluntary life insurance in the amount of $200,000

constitutes breach of contract.  (Id. ¶ 36.)  Plaintiff goes on to assert that although both LINA and

Renfrew contend that Mancuso cancelled her voluntary life insurance, no documentation of the

cancellation was ever provided and Mancuso never mentioned to Plaintiff, her brother, any

intention to cancel the policy.  (Id. ¶¶ 37–38.)  Defendants now respond that no evidence exists

that Mancuso, at the time of her death, was enrolled for voluntary life insurance coverage under a

policy issued by LINA with a $200,000 death benefit, or that Mancuso was otherwise entitled to

any such benefit.

A plaintiff asserting a breach of contract claim under Pennsylvania law must establish

three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and

(3) resultant damages.  Pennsy Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa.

Super. Ct. 2006).  Plaintiff's claim fails at the first element.

According to the unequivocal and undisputed record in this case, although Mancuso was

originally enrolled in a voluntary life insurance policy, that policy was not in effect on the date of

her death.  Specifically, the evidence reflects that Mancuso began purchasing voluntary life

insurance through Renfrew in 2006.  (Affidavit of Seth Diener ("Diener Aff."), ¶ 4, Aug. 28,

2014.)  Confirmation statements issued by Renfrew on November 1, 2008 and November 1, 2009,

demonstrate that Mancuso was enrolled in such a policy that provided her $120,000 of coverage. (Diener Aff., Ex. A.)  The November 1, 2009 confirmation statement indicated that the benefit elections reflected thereon would remain in effect until October 31, 2010.  (Id.)  The record then shows that Mancuso was enrolled in and paid premiums for this voluntary life insurance policy from January 2010 through June 2010.  (Def. LINA's Mot. Summ. J., Exs. C–H.)  In conjunction with these paid premiums, Renfrew issued checks to LINA.  (Id., Ex. M.)

From approximately January 1, 2010 to approximately March 24, 2010, Mancuso went on family leave for the birth of her son Thomas.  (Diener Aff. ¶ 12.)  Thereafter, in April 2010, after returning to work, Mancuso emailed Plaintiff to ask his advice about her employee benefits and who should be the beneficiary on her policy since she was in the process of a divorce.  (Id. ¶¶ 14–17.)  According to Plaintiff, he later told his sister, in an in-person conversation, that she should not cancel her voluntary life insurance at work.  (Diener Aff. ¶¶ 19–20.)

On May 13, 2010, Mancuso filed an Events Summary: Event Details Enrollment Change(s) form ("Events Summary" form) wherein she terminated her life insurance benefit, which change was approved on May 14, 2010.  (Def. Renfrew's Mot. Summ. J., Ex. B.)  On May 28, 2010, Mancuso signed and dated an Employee Benefits Summary form, which identifies those benefits elected and the charge per benefit.  (Def. Renfrew's Mot. Summ. J., Ex. C.)  This form indicates that Mancuso did not elect the voluntary life insurance, but still remained eligible for the $23,000 Employer-paid policy.  (Id.)  Although Plaintiff paid premiums for two months after the changes in benefits went into effect, a two-month credit for premiums associated with the voluntary life insurance coverage was issued to Mancuso in June 2010.  (Def. LINA's Mot. Summ. J., Ex. G.)  Thereafter, from July 2010 to October 2010, Mancuso paid no premiums

6

related to a voluntary life insurance policy.  (Id., Exs. I–L; Diener Aff. ¶ 39.)   According to the explicit terms of the policy issued by LINA to Renfrew, insurance terminates on the date coinciding with the end of the last period for which premiums are paid.  (Def. LINA's Mot. Summ. J., Ex. N at LINA-GM-130; Def. Renfrew's Mot. Summ. J., Ex. A.)

Plaintiff's efforts to deny the clear and unrefuted import of these documents are of no moment.  First, Plaintiff contends that the foregoing documentation relied on by Defendants is "unauthenticated and unexplained."  (Pl.'s Resp. Opp'n LINA's Mot. Summ. J. 2.)  Plaintiff, however, fails to acknowledge that he affirmatively produced the Events Summary and Employee Benefits Summary documents in response to Defendant Renfrew's Request for Production of Documents.  (Def. LINA's Mot. Summ. J., Ex. O.)  Moreover, it is well established that:

> Rule 56(e) does not require parties to authenticate documents where the appellant failed to challenge the authenticity of the documents in district court.  An evidentiary objection, not raised in district court, is waived on appeal.  This rule is equally applicable to a summary judgment motion as it is for a trial.  Consequently, Rule 56(e) defects such as unsworn or uncertified affidavits, deposition testimony or unauthenticated documents, are waived and those pieces of evidence will be admissible in a summary judgment proceeding if no motion to strike has been made at the district court level.

11 James Wm. Moore et al., Moore's Federal Practice § 56.14[2][c], at 56-184.1–56-185 (3d ed. 2001).  Plaintiff's cursory and parenthetical statement that the documents are "unauthenticated and unexplained" is insufficient to constitute a legal challenge to the documents.  Having failed to pose a cognizable objection to the admissibility of these documents—particularly given the fact that he produced them—Plaintiff has waived any such objection.[1]

---

[1]  Plaintiff seems to make some sort of challenge to the Events Summary document by asserting that "it appears to be computer-generated, without signature of any kind unlike virtually all of the other documents in the file relating to the decedent's coverage."  (Pl.'s Sur-reply 4.)  Further, he asserts that the document "looks like a random self-serving computer print-out that

Second, Plaintiff asserts that there was no meeting of the minds regarding Mancuso's termination of her life insurance coverage.  An enforceable contract requires an offer, acceptance, consideration, and mutual meeting of the minds.  Schreiber v. Olan Mills, 627 A.2d 806, 808 (Pa. Super. Ct. 1993).  In other words, the "test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."  Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298–99 (3d Cir. 1986) (citations omited).  Notably, however, "[a] true and actual meeting of the minds is not necessary to form a contract.  In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter."  Wells v. JPC Equestrian, Inc., No. Civ.A.13-2575, 2015 WL 163362, at *8 (M.D. Pa. Jan. 13, 2015) (quoting Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 482–83 (Pa. Super. Ct. 1984) (citations omitted)).

Plaintiff, in this case, has produced no evidence to undermine the facially obvious meeting of the minds.  Rather, according to the objective and outward manifestations of the parties' intentions, as detailed above, Mancuso fully intended to cancel her voluntary life insurance coverage.  She was capable of originally obtaining such coverage and, while that policy was in effect, she received confirmation statements reflecting that fact.  (Diener Aff., Ex. A.)  Thereafter, Plaintiff executed an Events Summary: Event Details Enrollment Change(s) form wherein she terminated her life insurance benefit, which change was approved on May 14, 2010.  (Def. Renfrew's Mot. Summ. J., Ex. B.)  On May 28, 2010, Mancuso signed and dated an Employee

_____

could have been generated long after-the-fact."  (Diener Aff. ¶ 35.)  Plaintiff's mere belief that this document is not "valid or proper" or that he did not think Mancuso ever saw it, without any foundation for such a belief, fails to state a valid objection.

Benefits Summary form, which identifies those benefits elected and the charge per benefit. (Def. Renfrew's Mot. Summ. J., Ex. C.)

Plaintiff's Affidavit—which purports to aver that Mancuso had no intent to cancel her life insurance coverage—does nothing to inject any issue of material fact into this analysis. As a primary matter, a substantial number of factual averments in the Affidavit are premised with the statements, "It is my understanding," "I believe," "I think," or "I do not think." (Diener Aff. ¶¶ 23, 25, 27, 36, 37, 41.) "Statements in affidavits made only on belief or on information and belief may not be considered in support of or in opposition to summary judgment." Mosley v. City of Pittsburgh Public Sch. Dist., No. Civ.A.07-1560, 2009 WL 2948519, at *1 (W.D. Pa. Sept. 8, 2009) (striking statements that contain language such as "I believe," "from what I understand," "evidently," "probably," "I must assume," "I have strong doubts," or "it is possible," or similar language because such language demonstrates speculation or a lack of personal knowledge on the plaintiff's part).

Moreover, to the extent Plaintiff purports to opine on the allegedly confusing nature of the way the documents were presented to Mancuso and whether follow- up confirmations should have been sent by Renfrew, his lay witness opinions cannot properly be considered. "[A] lay witness may only offer opinions on subjects 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" U.S. v. Kale, 445 F. App'x 482, 485 (3d Cir. 2011) (quoting Fed. R. Evid. 701). Proper administration of benefits procedures required by an ERISA plan are clearly within the realm of specialized knowledge and Plaintiff has not established any particular qualifications that allow him to opine on such procedures.

Finally, even to the extent the Court considers Plaintiff's statements regarding what he

9

understood Mancuso's intentions to be with respect to her voluntary life insurance policy, such subjective intentions are irrelevant for purposes of determining a meeting of the minds.  As noted above, it is the outward and objective manifestations of a party's assent, as opposed to his or her undisclosed and subjective intentions, that matter.  Wells, 2015 WL 163362, at *8.  Plaintiff has put forth no evidence that Mancuso's outward and objective manifestations to Defendants clearly indicated an intent to maintain or not cancel her voluntary life insurance policy.  Accordingly, the Court rejects Plaintiff's meeting of the minds argument.

Third, Plaintiff contends Mancuso had a "reasonable expectation" that her employee-benefits plan included her voluntary group life insurance coverage.  Putting aside Plaintiff's lack of evidentiary proof as to Mancuso's reasonable expectations,[2] this doctrine is inapplicable.  The Pennsylvania doctrine of reasonable expectations states that "[t]he reasonable expectations of the insured is the focal point of the insurance transaction . . . regardless of the ambiguity, or lack thereof, inherent in a given set of documents. . . . It is intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy."  UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004) (internal citations omitted).  "Pennsylvania law does not allow an insurer to use the explicit

---

[2]  In his affidavit, Plaintiff says he received an email from Mancuso that evidenced her intent to maintain her voluntary life insurance policy.  (Diener Aff. ¶¶ 14–18.)  The Court disagrees.  In that email, Mancuso expressed obvious concern with the amount of the deductions coming out of her paycheck given her precarious financial situation.  (Diener Aff., Ex. D.)  She then asked about changing beneficiaries with respect to her life insurance policies managed by both Diener and Renfrew.  (Id.)  It is undisputed that Plaintiff had an Employer-paid Policy for which she needed to change the beneficiary.  Nothing in that email clarifies that Mancuso was concerned about maintaining her voluntary life insurance policy, as opposed to her Employer-paid Policy.

language of its insurance policy to defeat the reasonable expectations of an insured, at least when the insured's expectations are based on the insurer's or its agent's representations, and that it is not unreasonable for insureds to rely on the representations of the insurer's agent rather than on the contents of the insurance policy to understand the scope or cost of her coverage." Dilworth v. Metro. Life Ins. Co., 418 F.3d 345, 353 (3d Cir. 2005).  In other words, this doctrine goes to interpretation of the contract language of the insurance policy and not to whether an insured intended or did not intend to cancel the policy.  As the question at issue in this case deals with whether Plaintif had a policy in place after she stopped paying premiums, and not with the scope of coverage under the policy, the reasonable expectation doctrine is irrelevant.  Seckel v. Minnesota Mut. Life Ins. Co., No. Civ.A.99-2834, 2000 WL 233246, at *4 (E.D. Pa. Mar. 1, 2000) ("As this matter does not deal with insurance coverage, but only with the duty to pay a premium when it is due, we find that plaintiffs have failed to demonstrate that the reasonable expectations doctrine applies.").

In response, Plaintiff asserts that the aforementioned cases would not govern the facts of this matter because "unlike those cases, the policy/scheme here was part of an employee-benefits package — and not an ordinary consumer-based life insurance transaction."  (Pl.'s Resp. Opp'n Def. LINA's Mot. Summ. J. 4.)  This argument is in error.  "'[B]reach of contract principles, applied as a matter of federal law, govern claims for benefits due under an ERISA plan,' . . . and straightforward language in an ERISA plan document 'should be given its natural meaning.'" Early v. U.S. Life Ins. Co. in City of N.Y., 222 F. App'x 149, 153 (3d Cir. 2007) (internal citations omitted).  "Likewise, to the extent that the doctrine of reasonable expectations applies under ERISA as a matter of federal common law . . . application of the reasonable expectations

doctrine would require as a 'predicate fact that the contract be ambiguous,' as '[g]eneral ERISA principles simply do not permit us to re-write the terms of the insurance contract.'" Id. (quoting Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1011 (10th Cir. 2000)).  As there is no allegation that the life insurance contract itself is ambiguous, but only whether a life insurance policy existed at the time of Mancuso's death, the reasonable expectations doctrine is simply inapplicable.

In short, Plaintiff has not met his burden of establishing the elements of breach of contract because he has failed to demonstrate that Mancuso had an active life insurance policy in effect at the time of her death.  The evidence is undisputed that Mancuso, at one time, maintained a voluntary life insurance policy; that some time in May 2010, she canceled that policy; and that from June 30, 2010 to the time of her death, she did not pay the premiums necessary to maintain that policy.  Over the course of the three-year history of this case, Plaintiff has produced no evidence to the contrary.  Whether Mancuso intended to actually cancel her policy or whether she was confused by the documents at issue is irrelevant.  The fact remains that, for purposes of the legal claim of breach of contract, Plaintiff has failed to establish the key element of the existence of a contract that could be breached.  Accordingly, the Court must grant Defendants' Motions for Summary Judgment as to Count II of the Second Amended Complaint.

**B.     Breach of Fiduciary Duty (Count III)**

Count III of the Second Amended Complaint alleges, in relevant part, as follows:

41.     As noted, as part of Lisa Marie Mancuso's employment with Defendant, The Renfrew Centers, Inc., Lisa Marie Mancuso was entitled to employment benefits, including the ability to purchase life insurance policies.

42.   Lisa Marie Mancuso did purchase life insurance policies through her employment at The Renfrew Centers, Inc., including a policy with a face value of $200,000 underwritten by the Life Insurance Company of North America, and at no time did she ever cancel any policies.

43.   By information and belief, sometime during Lisa Marie Mancuso's employment at The Renfrew Centers, Inc., Renfrew transferred the employer-sponsored life insurance from New York Life to the Life Insurance Company of North America.

44.   Alternatively and/or in addition to the foregoing counts, Defendant Renfrew and Defendant Life failed to properly transfer and record the policy owned by Lisa Marie Mancuso even though Lisa Marie Mancuso satisfied all of her obligations related thereto.

45.   In addition, although Lisa Marie Mancuso took all steps necessary to change the beneficiary on her employer-sponsored life insurance policies, Defendant Renfrew and Defendant Life failed to properly maintain the system for such changes and failed to record the change appropriately resulting in the within actions.

46.   Pursuant to the foregoing, Defendant, The Renfrew Centers, Inc. and/or Life Insurance Company of North American have breached a fiduciary duty to Lisa Marie Mancuso and therefore to her Estate resulting in the loss of $200,000.

(Second Am. Compl. ¶¶ 41–46.)

Under § 1132(a)(3) of ERISA, a civil action may be brought:

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3).  A plaintiff asserting a breach of fiduciary duty claim under § 502(a)(3) of

ERISA, 29 U.S.C. § 1132(a)(3), "must establish each of the following elements: (1) the

defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part

of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the

13

plaintiff on the misrepresentation." Lewis v. Allegheny Ludlum Corp., No. Civ.A.11–1619, 2013 WL 3989448, at *11 (W.D. Pa. Aug. 2, 2013) (citing Romero v. Allstate Corp., 404 F.3d 212, 226 (3d Cir. 2005), aff'd 597 F. App'x 116 (3d Cir. 2014)).  Defendants now move to dismiss this Count.  The Court addresses the arguments of each Defendant separately.

### 1.    Defendant LINA

Defendant LINA does not dispute that, as claims administrator for the policy, it bears a fiduciary duty under ERISA.  It asserts, however, that Plaintiff has not adduced any evidence that it made any material misrepresentation to Mancuso pursuant to the second and third elements of the claim.

As noted above, to establish a breach of fiduciary duty, a plaintiff must demonstrate that "the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries." In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009) (internal quotation marks omitted).  "Cases dealing with the duty of ERISA fiduciaries to disclose information to plan participants generally have involved misrepresentations or inadequate disclosure in the context of an extant communicative relationship." Nagy v. DeWese, 771 F. Supp. 2d 502, 518 (E.D. Pa. 2011); see also Shook v. Avaya, Inc., 625 F.3d 69, 73 (3d Cir. 2010) (an ERISA breach of fiduciary duty claim requires plaintiff to establish, inter alia, that "the *defendant* made affirmative *misrepresentations* or failed to adequately inform plan participants and beneficiaries" (emphasis added)).  Moreover, "although the Supreme Court has stated that 'fiduciary duty to disclose is not necessarily coextensive with fiduciary responsibility for the subject matter of the disclosure,' . . . a fiduciary still must be acting as a fiduciary when communicating or failing to communicate." Nagy v.

14

DeWese 771 F. Supp. 2d 502, 518 (E.D. Pa. 2011) (Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)).

In the present case, Plaintiff argues that the CIGNA Administration Manual For the Renfrew Centers, Inc. (the "Manual") shows that LINA and Renfrew worked together when dealing with various aspects of administration of the ERISA plan.  Such a general division of duties, however, is irrelevant with respect to a claim for breach of fiduciary duty.  Plaintiff has not identified that LINA made *any* representation to *Mancuso*, let alone a misrepresentation, within the context of its duties as a fiduciary in deciding the claim for benefits.  The purportedly confusing documentation and the absence of a new confirmation statement in May 2010 are attributable only to Defendant Renfrew.   Plaintiff points to no authority, nor is this Court aware of any, for the proposition that a fiduciary can be liable for breach of fiduciary duty for failure to disclose material facts to parties with whom such fiduciary never communicated about the plan.  As such, Count III against Defendant LINA must be dismissed.

### 2.    **Defendant Renfrew**

The validity of the breach of fiduciary duty claim against Defendant Renfrew hinges on the elements of material misrepresentation and detrimental reliance.  The substance of Plaintiff's argument on these points asserts as follows:

> In this case, the fiduciary was Renfrew, the beneficiary was Lisa Mancuso.  Here, Renfrew knew or should have known that the documents used to process changes to Lisa's employment benefits were so confusing that failure to clarify them or to follow up at least with a new Confirmation Statement constituted breach of fiduciary duty. Diener sets forth in his affidavit that his sister intended to merely remove her spouse's life insurance coverage and spousal benefits from her policy, not her entire policy. Yet the documents presented to her to implement these changes were unreasonably confusing, begging for a follow-up Confirmation-Statement-type form.  For example, the Salary Reduction Agreement listed no reduction to life insurance deductions.  The

15

Employee Benefits Summary did not distinguish the voluntary (i.e., employee's) portion of the life insurance policy from the employer's paid portion—whether accepted or rejected (as it now turns out there was just one life insurance policy but with separate 'tranches' . . . . Renfrew's failures with respect to inherently complicated benefits were compounded by the fact that Renfrew did not even terminate Lisa's payroll deduction for the voluntary life insurance right away. Even after the Salary Reduction Agreement and Employee Benefits Summary were signed, Renfrew continued to withhold the $7.00 premiums from Lisa's paychecks. . . . These documents were likely confusing to Renfrew too. The omissions/confusions/failures were material since they resulted in an erroneous cancelling of her $120,000 or $150,000 or $200,000 coverage at a crucial time.
. . .

The fourth element, "detrimental reliance" is not as explicitly explained by precedent. Nevertheless, detrimental reliance is established here where the wording on the interim agreements/summaries of the employee benefits subject to changes is so confusing that clarification [by issuance here of a "Confirmation Statement"] was necessary—and its omission detrimental to Lisa. Stated another way, Lisa relied upon Renfrew, and LINA, to process her intended changes. However, she relied to her detriment because the communications/forms/omissions used to process benefit changes caused (and did not correct) the confusion and therefore the processing of an error—to her detriment. Moreover, as noted, the processing of the error could not even be readily detected by Lisa. Even if Lisa had closely monitored her paycheck—and deductions—immediately following the May 2010 meeting, she would not have known that her life insurance policy had been erroneously cancelled. To the contrary, Renfrew continued to withhold the $7.00+ per paycheck premium until July 2010. By July, long after all of the other changes went into effect. Lisa would not have noticed the slight additional $7.00 change to her pay.

(Pl.'s Resp. Opp'n Def. Renfrew's Mot. Summ. 6–7.)

Under ERISA, "the duty to disclose material information 'is the core of a fiduciary's responsibility.'" Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993) (quoting Eddy v. Colonial Life Ins. Co. of Am., 919 F.2d 747, 750 (D.C. Cir. 1990)). "[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." In re Unisys, 57

F.3d at 1264. "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." Id. "[I]f an employee proves that an employer, acting as a fiduciary, made an inaccurate statement holding a substantial likelihood of misleading a reasonable employee into making a harmful decision regarding benefits, and that he relied to his detriment on that statement in making such a decision, the employee is entitled to equitable relief." Daniels v. Thomas & Betts Corp., 263 F.3d 66, 75–76 (3d Cir. 2001).

The record in this case, however, is devoid of evidence of any actual material misrepresentation or omission of material information by Renfrew that had a substantial likelihood of misleading a reasonable employee into making a harmful decision regarding benefits. As a primary matter, Plaintiff does not allege that Renfrew misled Mancuso, but rather that Renfrew "made a mistake" in believing that Mancuso wanted to terminate her voluntary insurance policy as opposed to cancel her husband's coverage. (Diener Aff. ¶ 25.) Plaintiff then points to no evidence showing that it was Renfrew that improperly misunderstood Plaintiff's directions as opposed to Plaintiff who misled Renfrew—intentionally or not—into thinking that she wanted her entire voluntary life insurance policy terminated. While material misstatements or omissions in the documents presented by Renfrew to Mancuso could perhaps have given rise to a breach of fiduciary claim, Plaintiff does not identify any such statements or omissions. Instead, Plaintiff's sole support for this proposition are generalized statements in his own affidavit that: the Salary Reduction Agreement "does not refer to the voluntary insurance anywhere" and that the Employee Benefits Summary "does not properly describe the $120,000 voluntary life insurance anywhere or distinguish it from the employer-automatic life insurance coverage . . . so it does not

17

properly highlight the changes to that coverage." (Diener Aff. ¶¶ 29, 31.)  Nothing in these documents, however, is so inherently misleading, such that the documents would have caused Plaintiff to mistakenly cancel her life insurance instead of simply changing the beneficiary.  In fact, the Employee Benefits Summary dated May 28, 2010 unequivocally shows that Mancuso's only life insurance coverage was for $23,000, thus clearly indicating that Mancuso no longer had any additional voluntary policy for $120,000.  Moreover, Plaintiff's opinion as to the misleading nature of the documents—without any concurrent showing that he has any expertise in or personal knowledge of this matter—is insufficient, and inadmissible, for any reasonable factfinder to conclude that such documents were confusing to Plaintiff or any other similar person.  Indeed, on their face, these documents—while not the model of clarity—do not make any misrepresentation about Plaintiff's termination of her coverage.  In other words, even if Mancuso did not intend to cancel her voluntary life insurance policy, Plaintiff has not shown that statements or omissions by Renfrew caused her to do so.

Even more troubling, Plaintiff does not offer any testimonial evidence from any Renfrew employee who spoke with Mancuso regarding the changes to her deductions.  As such, the record is devoid of evidence that could shed some perspective on the conversations that occurred between Plaintiff and her employer, or could indicate whether she understood that she was terminating her voluntary life insurance coverage.  Plaintiff's description of conversations between himself and Mancuso regarding Mancuso's desire to make changes to her deductions and her beneficiary designations—from which he surmised that Mancuso did not intend to cancel her voluntary life insurance—simply do not create any genuine issues of material fact.  This is particularly true in the face of the documentary evidence and some of the evidence provided by

18

Plaintiff himself.  It is undisputed that the November 1, 2009 confirmation statement Plaintiff signed showed that she would pay a $0 deduction for the Employer-paid Policy and a $4.21 deduction for the voluntary insurance policy (Diener Aff., Ex. A), while the May 28, 2010 Employer Benefits Summary she signed showed that she would pay a $0 deduction for both the Employer-paid Policy or the voluntary insurance policy, thereby clearly indicating a change in her coverage.  (Def. Renfrew's Mot. Summ. J., Ex. C.)   Moreover, notwithstanding Plaintiff's speculation that Mancuso would not have noticed the minimal difference in her paycheck resulting from the cancellation of her voluntary life insurance policy and the lack of premium payments, the fact remains that her paycheck was, in fact, altered beginning in July 2010.  Finally, in the April 2010 email exchange between Plaintiff and Mancuso, Mancuso clearly (a) indicated her intention to make changes in her payroll deductions; (b) asked Plaintiff for the contact information for his "insurance guy;" and (c) mentioned her "need to look into private insurance," suggesting an intent to obtain insurance from an outside source rather than via her employer. (Pl.'s Resp. Opp'n Renfrew's Mot. Summ. J., Ex. D.)  Ultimately, aside from his own beliefs that Mancuso did not intend to cancel her voluntary life insurance policy, Plaintiff points to no testimony, affidavits based on personal knowledge, documents, or other evidence suggesting that Defendant Renfrew either (1) made an affirmative misrepresentation to Mancuso that she was not canceling her voluntary life insurance policy by her actions or (2) failed to adequately disclose that the forms Plaintiff signed resulted in a termination of her voluntary life insurance benefits.

At this stage of the litigation, Plaintiff bears the burden of proof of coming forward with some evidence on which a reasonable factfinder could conclude that Defendant Renfrew made a material misrepresentation on which Mancuso reasonably relied.  Yet, Plaintiff has not sought any

discovery from Renfrew or taken any depositions of key individuals involved in the events at issue.  While it is perhaps plausible that someone at Renfrew misled Mancuso into believing that the documents she signed would keep her voluntary life insurance intact, plausibility is not the standard on review of a motion for summary judgment.  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he non-moving party must point to some evidence in the record that creates a genuine issue of material fact.  In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").  Absent some concrete evidence that Renfrew made either an affirmation misrepresentation or a misleading omission to Mancuso, this Court cannot find that any genuine issue of fact remains as to whether Renfrew is liable for breach of fiduciary duty.  Accordingly, Renfrew's Motion for Summary Judgment with respect to Count III of the Complaint is granted.

## IV.    CONCLUSION

In light of the foregoing, the Court will grant both Defendant LINA's Motion for Summary Judgment and Defendant Renfrew's Motion for Summary Judgment.  Plaintiff has failed to come forward with any evidence creating a genuine issue of material fact regarding the existence of a valid and paid-for policy of voluntary life insurance with the Defendants.  Moreover, Plaintiff has not established that either LINA or Renfrew made any material misrepresentations to Mancuso on which she relied when cancelling her life insurance.  Accordingly, the Court shall enter summary judgment on both Counts II and III of the Second Amended Complaint, which, in turn, closes the entire case.

An appropriate Order follows.